# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| William X. Walters,<br><br>              Plaintiff,<br><br>   vs.<br><br>San Diego, City of et al.,<br><br>              Defendants. | CASE NO. 12cv589-CAB (DHB)<br><br>Order:<br><br>(1) Granting the City Defendants' Motion for Summary Judgment;<br><br>(2) Denying as moot the City Defendants' Motion to Exclude;<br><br>(3) Granting in part the San Diego Pride Defendants' Motion for Summary Judgment; and<br><br>(4) Dismissing without prejudice Plaintiff's fifth cause of action for battery as alleged against the San Diego Pride Defendants<br><br>[Doc. Nos. 32, 33, 34] |

Before the Court is a motion for summary judgment filed by Defendants City of San Diego, Dave Nisleit, Gary Mondesir, Emilio Ramirez, Samuel Gardner, and Debbie Becker (collectively "City Defendants"). [Doc. No. 32.] Also before the Court are the City Defendants' Motion to Exclude Testimony of Plaintiff's Expert B. Chris Brewster and Objections to Evidence Submitted with Plaintiff's Notice of Lodgment. [Doc. Nos. 33 and 39-2.] For the reasons set forth below, the City Defendants' motion for summary judgment is **GRANTED**. The motion to exclude is therefore **DENIED AS MOOT**. Further, the rulings to the specific objections lodged by Defendants are

addressed to the extent necessary for purposes of the Court's summary judgment analysis.

Also before the Court is a motion for summary judgment filed by Defendant San Diego Lesbian Gay Bisexual Transgender Pride, Inc. and Defendant Shaun Chamberlin (collectively "San Diego Pride Defendants"). [Doc. No. 34.] For the reasons set forth below, the motion is **GRANTED** as to Plaintiff's second, third, fourth, and sixth causes of action, but **DENIED** as to Plaintiff's fifth cause of action. However, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's fifth cause of action as alleged against the San Diego Pride Defendants because the Court declines to exercise supplemental jurisdiction over this state law cause of action.

## I. INTRODUCTION

Plaintiff Will X. Walters' First Amended Complaint ("FAC") alleges the following seven causes of action against the City Defendants: (1) Injunctive Relief – Discriminatory Policy; (2) 42 U.S.C. § 1983 – 14th Amendment Equal Protection; (3) 42 U.S.C. § 1983 – 4th Amendment Search and Seizure; (4) False Arrest; (5) Battery; (6) Negligence; and (7) California Civil Code § 52.1 Civil Rights Violation. The City Defendants move for summary judgment on all causes of action.

In addition, certain of these causes of action are asserted against the San Diego Pride Defendants. Only Plaintiff's second, third, fourth, fifth and sixth causes of action remain against the San Diego Pride Defendants. The San Diego Pride Defendants move for summary judgment on these causes of action.[1]

## II. FACTUAL BACKGROUND

Defendant San Diego Lesbian Gay Bisexual Transgender Pride, Inc. ("Pride") is a San Diego based non-profit organization that puts on the annual San Diego Pride Parade and Festival ("Pride Event"). Plaintiff Will X. Walters ("Plaintiff" or

---

[1] The San Diego Pride Defendants request that the Court deem the material facts set forth in their Separate Statement admitted. However, the request is **denied** as the separate statement was not submitted with leave of court as required under the Court's chambers rules.

1  "Walters") attended the 2011 Pride Event wearing a gladiator-type black leather
2  loincloth, which when viewed in the standing position from the front and back covers
3  the genitals and the majority of Walters' buttocks. The loincloth is comprised of a belt
4  that has a front and back flap attached thereto. Each flap is approximately eight inches
5  wide and ten inches long. [Doc. No. 35-6, Ex. 4; Doc. No. 32-5, Ex. 3.][2]

6  Wearing this attire, Plaintiff was arrested at the Pride Event for violation of San
7  Diego Municipal Code § 56.53, "Nudity on Public Lands." [Doc. Nos. 32-3 and 32-4.]
8  San Diego Municipal Code §56.53 states in relevant part:

> No person over the age of ten years shall be nude and exposed to public view in or on any public right of way, public park, public beach or waters adjacent thereto, or other public land, or in or on any private property open to public view from any public right of way, public beach, public park, or other public land.

12  San Diego, Cal., Mun. Code § 56.53(c). The Municipal Code defines the word "nude"
13  as follows:

> Whenever in this section the word 'nude' is used, it shall mean devoid of an opaque covering which covers the genitals, pubic hair, buttocks, perineum, anus or anal region of any person, or any portion of the breast at or below the areola thereof of any female person.

17  *Id*. § 56.53(b). The San Diego Regional Officer's Report for the arrest states that
18  "Walters was walking around the festival with his buttock exposed." [Doc. No. 32-4
19  at 4.] Defendant Officer Gardner was one of the arresting officers and testified at his
20  deposition that the back flap "was very loose, that would move around very freely."
21  [Doc. No. 35-13 at 5.]

22  Approximately 60 days prior to the arrest of Walters at the 2011 Pride Event,
23  members of the SDPD met with event organizers and parade participants to discuss the
24  upcoming Pride Event. [Doc. No. 35-4 at 3.] A Pride staffer, Benjamin Orgovan, met
25  with SDPD's head of special events, Lieutenant David Nisleit, and discussed the City's
26  nudity ordinance. Lieutenant Nisleit testified at his deposition that the Pride staffer
27  told him "they were having issues with the public nudity and that they were asking the

---

[2] Walters was also wearing a leather strap across his chest and black work boots.

police department . . . to help get compliance." [Doc. No. 35-5 at 5-6.] According to the Pride staffer, Lieutenant Nisleit communicated to him that "the entire buttocks had to be covered," though "[n]ot the sides" of the body. [*Id*. at 3, 6-7.] Someone at this 2011 Pride Event planning meeting purportedly complained to Lieutenant Nisleit that women at the beach wear less. Nisleit's almost verbatim response was that "[t]echnically, they are in violation as well." [Doc. No. 35-4 at 7.]

Lieutenant Nisleit's interpretation of the public nudity ordinance contrasted with the interpretation that Lieutenant Carolyn Kendrick previously communicated on behalf of the SDPD to Pride parade contingents in 2010. Lieutenant Kendrick communicated in 2010 that compliance with the ordinance meant "not necessarily a 1-inch strip . . . [but] a piece of fabric, the width to cover the anus of anyone and then going around under and connecting to something." [Doc. No. 35-4 at 4-5.]

On the day at issue, Walters purchased a $20 ticket and was admitted into the 2011 Pride Event's festival by Pride personnel. He was inside the beer garden in the festival having his photograph taken by a photographer when Lieutenant Nisleit told him that his outfit was borderline breaking the nudity law. [Doc. No. 35-21 at 5.] Lieutenant Nisleit testified that he told Walters to cover up. [Doc. No. 35-5 at 21.] Walters testified that he responded, "So either cite me, arrest me, or leave me alone because I'm not interested in your opinion." [Doc. No. 35-21 at 6.] To this, Lieutenant Nisleit stated that he was the person in charge and his opinion mattered. [*Id*.; Doc. No. 35-5 at 20.] Walters replied, "You're not a judge, you're a police officer." [Doc. No. 35-21 at 6.] Lieutenant Nisleit walked away. [*Id*.]

Lieutenant Nisleit met up with defendant officers Debbie Becker and Gary Mondesir. Lieutenant Nisleit relayed the information regarding his encounter with Walters. Lieutenant Nisleit testified that he told them that "there was an individual who he thought was in violation of the nudity ordinance that became irate when contacted regarding the violation." [Doc. No. 35-5 at 21.] Officer Becker was the first to see Walters after this meeting. She testified as to forming an opinion that Walters

was in violation of the nudity ordinance because he was facing away from her as she approached, and she "saw his butt. The wind blew, and [she] saw his one buttock . . . . the behind portion of his butt where his buttocks intersected with his leg . . . . [she] could not see the crack." [Doc. No. 35-11 at 8-9.] Officer Becker tapped Walters on the should and radioed in "I see him. I have him here." [*Id.* at 9.]

Walters testified that Mondesir was the first officer he saw at this point in time. Mondesir directed Walters to come and talk with him. Lieutenant Nisleit was present as well. Walters refused to go with the officers and requested further information as to why he would have to go and talk with them. Officer Becker physically escorted Walters out of the festival beer garden.

From the point of the initial contact with Becker, Mondesir testified that Walters was not free to leave. [Doc. No. 35-9 at 10.] Mondesir also testified that Walters was under arrest once he refused to comply with requests from the officers. [*Id.*]

### III.  STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment is proper only upon the movant's showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material," for purposes of Rule 56, means that the fact, under governing substantive law, could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th. Cir. 2000). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. *Id.* (citing *Anderson*, 477 U.S. at 248).

As the moving party, the initial burden of establishing the absence of a genuine issue of material fact falls on Defendant. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party can demonstrate that the non-moving party has not made a sufficient showing on an essential element of his case, the burden shifts to the non-moving party to set forth facts showing that a genuine issue of disputed fact remains. *Id.* at 324. When ruling on a summary judgment motion, the court must view

all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. ANALYSIS

Mr. Walters argues his arrest and circumstances surrounding his arrest are actionable because his arrest was the result of an unlawful agreement between the SDPD and Pride's board, employees and volunteers to selectively and more rigorously enforce Section 56.53 at the "one gay event in San Diego, the Pride Event." [Doc. No. 35 at 12.]

### A. First Cause of Action for Injunctive Relief from Discriminatory Policy

Plaintiff requests injunctive relief against Defendants City of San Diego and Lieutenant Nisleit in his first cause of action. Municipal entities are subject to court ordered injunctions under § 1983 when the action that caused a constitutional injury "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't. of Social Services*, 436 U.S. 658, 690-91 (1978); *L.A. Cnty. v. Humphries*, 131 S.Ct. 447, 451 (2010). Plaintiff argues that the constitutional injury here is that SDPD unequally enforce the law based solely on sexual orientation. According to Plaintiff, there is ample evidence that, in comparison to "straight events" and non special events throughout San Diego, Defendants City of San Diego and Lieutenant Nisleit enforce a stricter nudity policy against gay male attendees of the "one gay event in San Diego, the Pride Event."

Plaintiff argues that a stricter nudity policy was put in place for the 2011 Pride Event. San Diego Municipal Code § 56.53 (Nudity on Public Lands) requires that a person's buttocks be covered. At previous Pride Events, there supposedly was an unwritten SDPD policy or practice that allowed 1" of fabric covering the buttocks to constitute compliance with § 56.53. However, for purposes of the 2011 Pride Event, there is evidence that Lieutenant Nisleit communicated to SDPD and Pride personnel

for the event that the entire buttocks would have to be covered to comply with § 56.53. The circumstances surrounding this change in policy coupled with anecdotal evidence of how lifeguards and other officers choose to enforce § 56.53 somehow shows that Defendants City of San Diego and Lieutenant Nisleit unconstitutionally enforced and will continue to unconstitutionally enforce § 56.53 unequally against gay men.

The Court finds that there is no evidence of a policy or practice by which SDPD enforce § 56.53 unequally against gay men. There is nothing in the record that reasonably suggests sexual orientation had anything to do with the decision to insist upon compliance with the literal text of §56.53 at the 2011 Pride Event. There is also nothing in the record to show that Defendants City of San Diego or Lieutenant Nisleit have a policy to enforce §56.53 differently at locations or events outside the Pride Event. Thus, summary judgment in favor of Defendants City of San Diego and Lieutenant Nisleit is warranted on the first cause of action because there is no competent evidence that the complained of unconstitutional policy exists.

There is anecdotal evidence before the Court that individuals wearing less than what Walters wore at the 2011 Pride Event may not have been cited for public nudity at different times and in different settings. The Court concludes that this anecdotal evidence is irrelevant, confusing, lacking in foundation, and therefore, inadmissible. For example, Plaintiff submits a slide-show video of "Flash," a gentleman who rollerblades on the boardwalk in a thong for the proposition that thongs are permitted in other settings in San Diego. From this evidence, Plaintiff presumably would have a trier of fact speculate that Flash's sexual orientation is heterosexual and that SDPD officers do not request that he cover up when they observe him wearing a thong. Such speculative evidence fails to raise a triable issue of fact. Moreover, even if Flash and other individuals have been allowed to wear less than Walters in other settings at other times, "[u]nequal treatment which results from laxity of enforcement . . . does not deny equal protection and is not constitutionally prohibited discriminatory enforcement." *Baluyut v. Superior Court*, 12 Cal.4th 826, 832 (1996); *Murgia v. Mun. Court*, 15

Cal.3d 286, 296 (1975) ("*laxity of enforcement* or the *nonarbitrary* selective enforcement of a statute has never been considered a denial of equal protection").[3]

In sum, there is no competent evidence of an unconstitutional policy or practice to warrant injunctive relief. Without a predicate policy or practice to enjoin, Walters does not have a cognizable claim or relative hardship demonstrating immediate threat of harm so as to warrant the requested injunction. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (plaintiff must show "real and immediate" threat of injury). Defendants City of San Diego and Lieutenant Nisleit's request for summary judgment on Plaintiff's first cause of action is **granted**.

### B. Second and Third Causes of Action Arising Under the Civil Rights Act 42 U.S.C. § 1983

Section 1983 actions seek redress for constitutional violations by government officials acting under color of law.

#### 1. Second Cause of Action for Equal Protection Under the Fourteenth Amendment

Plaintiff asserts his second cause of action for the alleged violation of his right to equal protection against Defendants Nisleit, Mondesir, Gardner, Ramirez, Becker, and the San Diego Pride Defendants. In the Ninth Circuit, "§ 1983 claims based on Equal Protection violations must [show] intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). While generally not applicable to private parties, a § 1983 action can lie against a private party when "he is a willful participant in joint action with the state or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980). Under this joint action theory, private parties cannot be

---

[3] As another example, Plaintiff submits a declaration from former SDPD detective, Heather Petty as evidence that g-strings are permissible everywhere else in San Diego. As a detective, officer Petty "regularly worked details" in Mission Beach and Pacific Beach for an unstated period of time where "'thong' and 'g-string' bathing suit bottoms on both men and women were permitted." [Doc. No. 35-24.] The Court sustains Defendants' objections to this evidence based on Fed. R. Evid. 401 (relevance), 602 (lack of personal knowledge or foundation), 701 and 702 (improper lay opinion), and 802 (hearsay). This evidence fails to give rise to an inference of anything more than laxity of enforcement.

held liable under 42 U.S.C. § 1983 absent evidence that they conspired with state officials or willfully participated in the offending governmental activity to deprive a plaintiff of a federal right. *Id.*; *Kimes v. Stone*, 84 F.3d 1121, 1126 (9th Cir. 1996).

Plaintiff insists there is a stricter nudity policy against gay males that was implemented by Lieutenant Nisleit in violation of his equal protection rights under the Fourteenth Amendment. As discussed above, the Court finds that Plaintiff proffers no competent evidence from which a reasonable fact finder could conclude that Walters' arrest was based on his sexual orientation, or that it resulted from an unequal enforcement policy or practice concerning public nudity. Equally, there is no evidence that the San Diego Pride Defendants entered into a conspiracy with the SDPD or willfully sought to implement an unlawful policy of discriminatory and selective enforcement of San Diego's public nudity laws. Plaintiff has no admissible evidence, circumstantial or otherwise, to support this proposition against any defendant.

There is evidence that a Pride staffer may have requested that the SDPD "help get compliance" with San Diego's public nudity ordinance. There is also evidence that Lieutenant Nisleit believes everyone has to cover their entire buttocks in order to be in compliance with San Diego's public nudity ordinance. There is no evidence that shows or gives rise to a reasonable inference that the enforcement of § 56.53 (Nudity on Public Lands) at the 2011 Pride Event can be linked to sexual orientation.

There is evidence that Walters may be the only person in the history of the City of San Diego arrested and booked on a stand-alone charge of public nudity that was not completely naked. However, that does not give rise to a triable issue of fact as to whether SDPD's enforcement of the law was a denial of Walters' right to equal protection of the laws. For example, the evidence does not show that the SDPD have only insisted upon compliance with the literal text of §56.53 at Pride Events. Nor does the evidence show, for example, that it would be a permissible inference to assume Defendants believe that all attendees of Pride Events are homosexual and enforce policies based on that belief.

In fact, Plaintiff maintains in his FAC, which was filed with the benefit of discovery, that Pride promoted the Pride Event festival to both the straight and gay communities. [*See* FAC ¶29.] The record suggests that nudity was a concern in part because families would be in attendance. [*See* Doc. No. 35-5 at 17 (Nisleit deposition testimony: "We talked about this being a family event, that the venue was open to all ages."").] Importantly, there is no evidence that Walters' (or anyone else's) sexual orientation was part of the dialogue leading to the arrest of Walters.

Viewing the evidence in the light most favorable to Walters, he cannot show the enforcement of § 56.53 had a discriminatory effect against homosexuals, or that the enforcement was motivated by his sexual orientation. The San Diego Pride Defendants' request and Defendants Nisleit, Mondesir, Gardner, Ramirez, and Becker's request for summary judgment on Plaintiff's second cause of action are **granted**.

### 2. Third Cause of Action for Fourth Amendment Violations

Plaintiff alleges Defendants Nisleit, Mondesir, Ramirez, Gardner, and Becker, along with the San Diego Pride Defendants, unlawfully arrested him in violation of his Fourth Amendment Rights. "[A]n arrest without probable cause violates the fourth amendment and gives rise to a claim for damages under § 1983." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988). There is no violation of the Fourth Amendment if probable cause existed for the arrest.

Further, the doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests: "[T]he need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In the context of arrests, police officers are entitled to qualified immunity from suit for damages arising out of a Fourth Amendment violation if a

reasonable officer with the same facts as the defendant officer could have reasonably believed that the arrest was supported by probable cause even if a court later determines it was not. *Bilbrey v. Brown*, 738 F.2d 1462, 1467 (9th Cir. 1984).

"Reasonable cause [to arrest] is a well-established legal standard, defined as that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." *People v. Adair*, 29 Cal. 4th 895, 904 (2003) (quotations omitted). The ordinance at issue states that "'nude' . . . shall mean devoid of an opaque covering which covers the genitals, pubic hair, buttocks, perineum, anus or anal region of any person." San Diego, Cal., Mun. Code § 56.53(b).

Here, the undisputed facts show both that there was probable cause for the arrest and even if probable cause was lacking, Defendants Nisleit, Mondesir, Gardner, Ramirez, and Becker are entitled to qualified immunity. The undisputed facts are that officers observed Plaintiff wearing a g-string covered by a loincloth consisting of two 8" x 10" flaps that moved freely. Plaintiff's Exhibit 4, which shows static pictures of the front and back of Walters wearing his 2011 Pride Event outfit, supports other evidence in the record that Walters outfit failed to cover his buttocks as required by § 56.53. [*See* Doc. No. 35-6.]

At a minimum, from the side and back vantage points Walters' buttocks was exposed in violation of § 56.53 as he moved around the 2011 Pride Event. Plaintiff argues he was not "nude," but this argument fails to recognize neither he nor his outfit remained in the same place or position at the 2011 Pride Event. The undisputed evidence shows that the flaps of Walters' loincloth moved freely as Walters moved and as the wind blew that day, exposing his buttocks. There was probable cause for the arrest of Walters and even if probable cause was lacking, a reasonable officer with the same facts as the defendant officers could determine there was probable cause to arrest Walters for failing to cover his buttocks as required by the plain text of San Diego's public nudity ordinance.

Further, as to the San Diego Pride Defendants, the record does not support Plaintiff's theory that Shaun Chamberlin was an active conspirator in Plaintiff's arrest and seizure from the Beer Garden. There is no evidence of a conspiracy to discriminate against Walters or any other men based on their sexual orientation.

Therefore, the requests for summary judgment on Plaintiff's third cause of action by the San Diego Pride Defendants and Defendants Nisleit, Mondesir, Ramirez, Gardner, and Becker are **granted**.

### C. Fourth Cause of Action for False Arrest

Similar to his third cause of action, Plaintiff alleges as his fourth cause of action Defendants City of San Diego, Nisleit, Mondesir, Ramirez, Gardner, and Becker, along with the San Diego Pride Defendants, falsely arrested Walters. False arrest is a form of false imprisonment and not a separate tort. *Collins v. City and County of San Francisco*, 50 Cal. App. 3d 671, 673 (1975). However, "[t]here shall be no civil liability on the part of . . . any peace officer . . . acting within the scope of his or her authority, for false arrest or false imprisonment . . . [if] [¶] [t]he arrest was lawful, ***or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful***. . . ." *O'Toole v. Superior Court*, 140 Cal. App. 4th 488, 511-12 (2006) (alteration and emphasis in original) (quoting Cal. Penal Code § 847(b)). For the reasons stated above, Plaintiff's false arrest claim fails because probable cause existed for the arrest and even if probable cause did not exist, the defendant officers are protected by qualified immunity. There is no evidence of a conspiracy to discriminate against men based on their sexual orientation.

Therefore, the San Diego Pride Defendants' request and Defendants City of San Diego, Nisleit, Mondesir, Ramirez, Gardner, and Becker's request for summary judgment on Plaintiff's fourth cause of action is **granted**.

### D. Fifth Cause of Action for Battery

Plaintiff's fifth cause of action is battery, and he asserts it against Defendants Nisleit, Mondesir, Gardner, Ramirez, Becker, and the San Diego Pride Defendants.

"Under California law, the tort of battery requires the unlawful, harmful, or offensive contact with the person of another." *In re Baldwin*, 249 F.3d 912, 918 (9th Cir. 2001).

Plaintiff appears to have abandoned his fifth cause of action for battery against Defendants Nisleit, Mondesir, Gardner, Ramirez, and Becker, as he does not address Defendants' motion regarding this cause of action. "In order to prevail on a claim of battery against a police officer, the plaintiff bears the burden of proving the officer used unreasonable force." *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1102 (2004). Plaintiff has not provided any evidence concerning the battery claim against the arresting officers. Based on the record before the Court, the officers used reasonable force. Defendants Nisleit, Mondesir, Gardner, Ramirez, and Becker's request for summary judgment on Plaintiff's fifth cause of action for battery is **granted**.

As to the San Diego Pride Defendants, Plaintiff puts forth his deposition testimony as evidence that Defendant Chamberlin struck Walters' arm outside of the Pride Event. The San Diego Pride Defendants argue that Plaintiff admitted that Defendant Chamberlin did not strike Walters' arm. In response, Plaintiff explains that the only thing he admitted is that the phone he was holding when his arm was struck did not fall to the ground. On reply, the San Diego Pride Defendants do not present any argument with respect to Plaintiff's battery cause of action. Therefore, because there are disputed issues of material fact from with a reasonable fact finder could find Defendant Chamberlin committed the tort of battery, the San Diego Defendants' request for summary judgment on Plaintiff's fifth cause of action is **denied**.

**E. Sixth Cause of Action for Negligence**

Plaintiff's sixth cause of action is for alleged negligence by Defendants Nisleit, Mondesir, Gardner, Ramirez, and Becker, as well as the San Diego Pride Defendants. With respect to the arresting officers, Plaintiff concludes "there is ample evidence from which a jury could conclude the arresting officers in this matter did not act reasonable in arresting Mr. Walters." [Doc. No. 35 at 28.] Plaintiff does not cite to the record in support of this conclusion. As explained above, the evidence shows that the arresting

officers had a reasonable belief that Plaintiff was in violation of San Diego's public nudity ordinance. There is no evidence from which a fact finder could reasonably conclude that the arrest of Walters violated his constitutional rights. Therefore, Defendants Nisleit, Mondesir, Gardner, Ramirez, and Becker's request for summary judgment on Plaintiff's sixth cause of action for negligence is **granted**.

Further, with respect to the San Diego Pride Defendants, Plaintiff argues that they owed him a legal duty of care to inform the attendees of the change in the enforcement of San Diego's public nudity ordinance. Given the Court concludes that the arresting officers enforced the plain text of the nudity ordinance, the San Diego Pride Defendants owed no duty to Plaintiff to warn that the police intended to enforce the law. *See Antonio-Martinez v. I.N.S.*, 317 F.3d 1089, 1093 (9th Cir. 2003) ("As a general rule, ignorance of the law is no excuse"). Therefore, the San Diego Pride Defendants' request for summary judgment on Plaintiff's sixth cause of action is **granted**.

### F.  Seventh Cause of Action for Violation of California Civil Code § 52.1

Plaintiff's seventh cause of action is for alleged violations of his constitutional rights under California Civil Code § 52.1 by the City, Nisleit, Mondesir, Gardner, Ramirez, and Becker. "To obtain relief under this statute, a plaintiff must prove that a defendant tried to, or did, prevent the plaintiff from doing something that he had the right to do under the law, or to force plaintiff to do something that he was not required to do under the law." *Knapps v. City of Oakland*, 647 F.Supp.2d 1129, 1168 (N.D. Cal. 2009). As explained above, the defendant officers had a reasonable belief that Plaintiff was in violation of San Diego's public nudity ordinance. Therefore, there is no legal basis to support Plaintiff's seventh cause of action.

Defendants' request for summary judgment on Plaintiff's seventh cause of action under California Civil Code § 52.1 is **granted**.

### V.  CONCLUSION

The City Defendants' motion for summary judgment [Doc. No. 32] is

**GRANTED**. The Motion to Exclude Testimony of Plaintiff's Expert B. Chris Brewster [Doc. No. 33] is **DENIED AS MOOT**. The San Diego Pride Defendants' motion for summary judgment [Doc. No. 34] is **GRANTED** as to Plaintiff's second, third, fourth, and sixth causes of action, but **DENIED** as to Plaintiff's fifth cause of action. Plaintiff's fifth cause of action against the San Diego Pride Defendants for an alleged battery is a state law cause of action. Battery is the only remaining cause of action in this case. The Court declines to exercise supplemental jurisdiction over this cause of action. As a result, Plaintiff's fifth cause of action against the San Diego Pride Defendants for an alleged battery is hereby **DISMISSED WITHOUT PREJUDICE** to timely refiling in the appropriate state court.

IT IS SO ORDERED.

DATED: March 11, 2014

**CATHY ANN BENCIVENGO**
United States District Judge